## State Mutual Life Ins. Co. v. J. B. Newton, for the use, etc.

1.  LOTTERIES—*Money Lost is Not Recoverable.*—Money lost in a lottery is not recoverable at common law, and the statute containing no provision for its recovery, the court is of the opinion that no action can be maintained for its recovery.

2.  GAMING—*Not Prohibited at Common Law.*—Gaming was not prohibited by common law, nor was money lost at gaming recoverable at common law.

3.  SAME—*Recovery of Money Lost at, Under the Statute.*—Under

Section 132 of Div. 1 of the Criminal Code, money lost at gaming may be recovered from the winner by an appropriate action at law or proceeding in chancery.

4. PENAL STATUTES—*Section 132 of the Criminal Code Not Applicable to Lotteries.*—Section 132 of the Criminal Code, providing for the recovery of money lost at gaming, is a penal statute, in derogation of the common law, and is to be strictly construed. It does not apply to money lost in a lottery.

**Assumpsit,** for money lost in a lottery. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1899. Reversed. Opinion filed June 14, 1900.

RUNYAN & RUNYAN, attorneys for appellant.

STEDMAN & SOELKE, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

The action in which the judgment appealed from was rendered was to recover back money paid by appellee on two contracts, the same in terms, except as to date and number, one of which is as follows:

"Number, 511.    Dollars, 600.

MONTHLY ANNUITY CONTRACT.

The State Mutual Life Insurance Company of Illinois, in consideration of the payment to this company of ten dollars, and the further payment of one dollar and fifty cents on the first day of each and every month after the date hereof, for the period of ten years, hereby guarantees to pay unto J. B. Newton, or the legal holder hereof, the sum of six hundred dollars, in sixty monthly annuities of ten dollars each.

Subject, however, to the express condition that if the legal holder thereof fails, for fifteen days, to pay the monthly dues of any month, then a fine of one dollar shall be assessed against this contract, and if the monthly dues in arrears, and fines, are not paid by the last day of the month, then this contract shall, without notice, become null and void, and all payments made hereon shall be forfeited to the company.

And also subject to the further express condition that

the company reserves the right to retire this contract be-
fore maturity at its retiring value, in the order named.

It is further expressly provided and agreed that this
contract is made and accepted subject to the benefits and
provisions indorsed hereon, which are hereby declared to be
a part of this contract.

In witness whereof, The State Mutual Life Insurance
Company of Illinois has caused this contract to be signed
by its president and secretary and its corporate seal to be
affixed, at its Chicago office, in the city of Chicago, Illinois,
this 30th day of December. A. D. 1893.

JOHN L. BEVERIDGE, President.

S. M. RIDDISON, Secretary.

BENEFITS AND PROVISIONS.

1. Monthly annuity contracts are numbered, numeric-
ally, from one upward.

2. The reserve fund shall consist of sixty cents of each
monthly payment on this and all similar contracts, and
one-third of all fines and transfer fees, and shall be loaned
upon real estate and other good securities, or to the holders
of monthly annuity contracts on which all payments have
been made, upon terms and security approved by the board
of directors of the company, and shall be used in paying
monthly annuities on matured monthly annuity contracts.

The first monthly annuity on this contract shall become
due and payable thirty days after the final monthly pay-
ment has been paid thereon; or in lieu of the monthly annui-
ties, the legal holder hereof may, within thirty days from
the date hereof, elect in writing to accept $500 in cash,
which election shall be binding on the company.

3. The retiring fund shall consist of fifty cents of
each monthly payment on this and all similar contracts,
and one-third of all fines and transfer fees, and shall be paid
out monthly, on or before the fifteenth day of the following
month, in retiring monthly annuity contracts before matu-
rity at their retiring value, according to the following sched-
ule, viz. :

Nos. 1—3—10          Nos. 4—12—40
  "   2—6—20            "   5—15—50
  "      9—30           "      18—60
                        "   7—21—70, etc.,

and in refunding, in case of death of the legal holder of
any monthly annuity contract, the amount paid thereon, if
so desired.

And when the retiring number of any monthly annuity

contract shall be reached, the holder thereof, upon receiving payment of its retiring value, shall surrender the same for cancellation.

4. The retiring value of any monthly annuity contract shall be the amount paid thereon, together with the interest at the rate of seven per cent per annum, and its proportionate share of the accumulations.

5. The general fund shall consist of forty cents of each monthly payment of this and all similar contracts, and shall be used in promoting the business of the company.

6. At any time after two years from date hereof, the legal holder giving the company thirty days' notice in writing (this contract not being liable to forfeiture) shall have a paid-up value of the amount paid hereon, payable out of the reserve fund at the end of ten years from the date of this contract, with four per cent interest.

7. The party in whose name this contract stands on the books of the company shall be considered the legal holder hereof, and no assignment or transfer shall be binding on the company unless the transfer is recorded on the company's books, and for such transfer, a fee of three dollars shall be paid.

8. This contract shall be liable for the first payment, monthly payments, fines, transfer fees, loans and interest thereon, and upon any settlement of this contract all indebtedness shall be deducted."

The other contract is dated May —, 1894, and numbered 1079.

The cause was tried by the court, without a jury, and the court found the issues for appellee, assessed his damages at the sum of $72.50, and rendered judgment accordingly.

The theory on which the action is brought is that under the pretense of conducting an insurance business, appellant is in fact conducting a lottery; that this is evidenced by the contracts in question, and that, such being the case, appellee may recover moneys paid by him on said contracts. Conceding, for the sake of argument, but not deciding, that the contracts are evidence that appellant is conducting a lottery business, can appellee recover moneys paid by him on the contracts ? Gaming was not prohibited, nor was money lost at gaming recoverable by the common law. In the present case the money was voluntarily paid, and unless by the statute, it is recoverable, the action can not be main-

tained.  Appellee's counsel impliedly concedes this by contending that the statute authorizes its recovery.  The criminal code, division 1, section 132, provides:

"Any person who shall, at any time or sitting, by playing at cards, dice, or other game or games, or at betting on the sides or hands of such as do game, or by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election, or unknown or contingent event whatever, lose to any person so playing or betting, any sum of money or other valuable thing, amounting in the whole to the sum of $10, and shall pay and deliver the same or any part thereof, the person so losing and paying or delivering the same, shall be at liberty to sue for and recover the money, goods or other valuable thing so lost and paid or delivered, or any part thereof, or the full value of the same, by action of debt, replevin, assumpsit or trover, or proceeding in chancery, from the winner thereof, with costs, in any court of competent jurisdiction."  1 S. & C.'s Stat. 1896, p. 1299, parag. 255.

We are of opinion that even conceding that the contracts were issued or made in the conducting of a lottery business, the transaction is not within the letter or spirit of the section quoted.  It can not be said that the money was lost by playing at cards, dice, or any other game, or by betting, or by any wager.  That the section quoted was not intended to include money lost in a lottery, is further apparent from sections 180 to 185, both inclusive, of the same division of the criminal code, by which section lotteries are prohibited and penalties for conducting them imposed.  (Ib., pp. 1321–1322.)  Not only is there no provision in the legislation in respect to lotteries for the recovery by the holder of lottery tickets of the money paid for the tickets, but section 185 provides that prizes drawn by the holders of lottery tickets shall be forfeited to the State.  (Ib., p. 1322, parag. 329.)  Penal statutes and statutes in derogation of the common law are strictly construed.  The money not being recoverable at common law, and the statute containing no provision for its recovery, we are of opinion that no action for its recovery can be maintained.

The judgment will be reversed, appellant to recover its costs of this court.