OLMS v. BINGHAM et al.

(Supreme Court, Appellate Division, Second Department. January 11, 1907.)

1. INJUNCTION—SUBJECTS OF PROTECTION—INJURY TO BUSINESS.
An owner of a hotel is entitled by injunction to protect his business from continued interference by the police force on the pretext of inspecting the premises for violation of the law.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 142, 147.]

2. SAME—PRELIMINARY INJUNCTION—CONTINUANCE.
A temporary injunction against interference with a summer hotel business by the police will not be continued where the plaintiff has had the opportunity to bring the case on for trial, and where it can be brought on for trial before the hotel is to be used further in its regular business.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 367, 368.]

Appeal from Special Term.

Action by Louis W. Olms against Theodore A. Bingham, individually, and as police commissioner, and others. From an order denying plaintiff's motion to continue a temporary injunction during the pendency of the action, and vacating such temporary injunction, plaintiff appeals. Affirmed.

Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ.

Charles L. Hoffman, for appellant.
James D. Bell, for respondents.

GAYNOR, J. The complaint and moving affidavits state that the plaintiff is a licensed hotel keeper at the seaside place within the city limits called Arverne; that the hotel has 39 bedrooms, and has a music casino; that every day for two weeks three police officers came to this place in the evening under direction of the captain of the precinct, and demanded that he conduct them through the hotel for inspection; that they would go through the entire premises, occupying one-half an hour; that they also came often after midnight and demanded that the plaintiff open all of the bedrooms to them, and woke guests up and demanded entrance to their rooms; that one evening they called out in a loud voice so as to be heard by the guests that their captain informed them that gambling was carried on upstairs, and sent them to go through the entire place, and they went through; that a uniformed officer was stationed at the door of the hotel for several days, and that he stopped persons who were entering and asked what their business there was, and told them not to enter, and sometimes would not allow them to enter; that the plaintiff asked the captain to stop these acts, who said that he had no evidence of anything wrong at the plaintiff's hotel, but would not stop; that some of his superiors would do these things if he did not. It is also alleged that the said interference of the police was causing people to leave the plaintiff's hotel, or stay away from it, and that he was being thereby irreparably injured.

The captain and two of his officers make affidavit in reply. They do not deny any of the foregoing allegations, except that they reduce the number of visits, and claim that they were conducted quietly, and with the plaintiff's consent; that (to use the words of one affidavit) they "never opened any door which was closed, and only inspected such rooms as the plaintiff willingly consented to and did consent to show." If it was their duty to make inspection this was certainly the strangest, most gentlemanly, and even obsequious inspection that was ever made. The captain says he made the inspections in compliance with law requiring him to make inspections of places licensed for the sale of intoxicating liquor; he does not say what law this is. There is no allegation or claim made in these affidavits that the plaintiff or any one else has ever violated any law in or about his place. There is no denial that a policeman was stationed at the door, and that he annoyed and interfered with people and the plaintiff's place and business in the way which has been stated above, nor of what the captain said when asked to stop the interference of his policemen.

It is very easy to see the extortion that could be practiced on hotel proprietors by policemen and their superiors if they were permitted to unlawfully invade hotels and annoy the proprietors and guests as they saw fit. "The police force are no more to be permitted to destroy a hotel business by unlawful trespass and force than any other business," as we have already said. The duty to inspect licensed places does not justify any such conduct. That the police will be restrained by injunction from committing a continuing illegal trespass has been decided by this court and by the Appellate Division in the first judicial department

so often that there should be no need to reiterate it. "The ways, methods and procedure for the administration and enforcement of the criminal law are carefully prescribed and limited by law, and when the police go outside of them, and violate the rights of property, person or house of the individual, they are not engaged in administering and enforcing the criminal law, but are common trespassers and law breakers." Hagan v. McAdoo, 113 App. Div. 506, 99 N. Y. Supp. 225; Levy v. Bingham, 113 App. Div. 425, 99 N. Y. Supp. 258; Hale v. Burns, 101 App. Div. 101, 91 N. Y. Supp. 929; Burns v. McAdoo, 113 App. Div. 165, 99 N. Y. Supp. 51; McGorie v. McAdoo, 113 App. Div. 271, 99 N. Y. Supp. 47.

But there is now a reason why an injunction during the pendency should not be granted herein. Since September 17th last when the order appealed from was entered the plaintiff could have brought this action on for trial and had it tried. Injunctions like these are not to be granted except of necessity, and if any necessity existed here it was for the plaintiff to have brought the trial on before this time. Besides, his hotel is a summer one, and he can have the case tried before next summer.

The order may therefore be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.