Walstein Harlow, Appellant, v. Taylor A. Snow et al., Appellees.

Gen. No. 14,307.

1. CONTRACTS—*effect of provision of forfeiture.* A contract of investment which provides in certain contingencies for a forfeiture of money paid in is not for that reason void.

2. CONTRACTS—*what not gambling.* Held, that the particular contracts in question in this case involving the purchase of real estate pursuant to a certain co-operative certificate plan which made the chances of those investing unequal, did not constitute gambling contracts and were not therefore void.

3. LOTTERIES—*what not.* Held, that a particular plan having in view the acquisition of real estate by certificate holders, did not constitute a lottery within the meaning of the statute of this state.

Trespass on the case. Appeal from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed March 4, 1909.

JOHN E. ERICKSON, for appellant.

MATHER & HUTSON, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of *nil capiat* rendered against the plaintiff and in favor of the defendants by the Municipal Court of Chicago in a suit in which a jury was waived and the cause submitted to the court on the following.

AGREED STATEMENT OF FACTS.

"Walstein Harlow, plaintiff, on March 2nd, A. D. 1905, made with the defendants ten agreements or contracts in the Co-Operative Home Purchasing Society, number 45, 46, 47, 48, 49, 50, 51, 52, 53 and 54.

It is agreed that the plaintiff paid the sum of five dollars ($5) per month upon each of said contracts, monthly, for a period of twenty-five (25) months, and until the payment, due April 2, 1907, and that said payment of April 2, 1907, was the last payment made by the plaintiff.

It is agreed that prior to the execution of said contracts, the plaintiff and defendants had several conversations in reference to the meaning and operation of the said contracts, and that the plaintiff understood from the statements of the defendants that the plaintiff would be put in possession of property under said contracts within a period of about eighteen (18) months from the date of the contracts, but that the defendants in no way misrepresented the said contracts or deceived the plaintiff in respect thereto. That the defendants submitted exact copies of said contracts to the plaintiff for his examination, and that the plaintiff examined same and kept them for a period of one week before signing same and returning them to the defendants. That upon the execution of said contracts

by the plaintiff, the defendants executed duplicates
thereof, which the defendants delivered to the plaint-
iff, and copies of which are hereto attached.

That at the time of making such payment of April
2, 1907, the plaintiff stated to the defendants that un-
less the defendants matured all of his said contracts
on or before his next payment, due between May 1st
and May 10, 1907, he, the plaintiff, would refuse to
make any and all further payments under said con-
tracts; that the plaintiff would abandon the same, and
would demand back from the defendants all of the
moneys paid to them by the plaintiff.

That on the 13th day of May, 1907, the defendants
mailed to the plaintiff a notice or demand for pay-
ment of the moneys then due, and again on June 12,
1907, the defendants mailed to the plaintiff a notice
or demand, and on the 12th day of July, 1907, the
defendants mailed to the plaintiff a notice or demand
for moneys then due, and upon the 12th day of August,
1907, the defendants mailed to the plaintiff a cancel-
lation notice; all of which said notices or demands
were duly received on or about their date by the
plaintiff through the mails.

It is further agreed that the plaintiff, upon the
mailing of the said cancellation notice, was more than
four months in arrears in payments, according to the
said contracts. That the plaintiff had duly paid his
membership of $5 per share, making $50 upon the ten
contracts. That all payments were promptly made by
the plaintiff to the defendants, and that no fines were
imposed or collected by the defendants from the plaint-
iff, and that the plaintiff paid to the defendants, in
all, the sum of $1,300.

It is agreed that the said contracts and all of them
have not yet matured, according to the terms of said
contracts, and that the plaintiff had not been put
in possession of any real estate, as described in said
contract, and the plaintiff has in all respects fulfilled
and performed the obligations by him to be performed,
according to the said contracts, except that the plaint-
iff has made default in payment due May 2, 1907, as
aforesaid.

It is further agreed that on the 15th day of June, 1907, the plaintiff went to the office of the defendants and demanded from them a refund of all of the moneys paid by the plaintiff to the defendants, and that such demand was refused by the defendants, and that the defendants stated to the plaintiff at said time and place that they, the defendants, were ready, able and willing to refund at such time as the said contracts should mature, eighty per cent (80%) of all the moneys paid by the plaintiff to the defendants after the first twelve (12) payments paid by the plaintiff to the defendants, and that the defendants stated to the plaintiff at said time and place that the defendants were at all times ready, able and willing to fulfill any and all provisions of the said contracts, so far as the said contracts obligated the defendants to make payments, or to do any other acts or things.

It is further agreed that the defendants made and executed the said contracts, and the contracts of all other co-operators, numbering them as prescribed in said contracts. That the defendants created and maintained maturity funds and expense funds, as set forth in said contracts. That the defendants secured many other co-operators, who have been and still are making payments according to said contracts, and that the defendants have run and conducted the said Co-Operative Home Purchasing Society in an efficient, conservative and successful manner, and that the defendants have in all respects fulfilled their said contracts with the plaintiff, and have carried out and performed all of the obligations and duties imposed upon the defendants by the said contracts.

It is further agreed that at the time the plaintiff demanded of the defendants that the defendants cause his said contracts to mature as aforesaid, the defendants stated to the plaintiff that the maturity of contracts with all co-operators depended upon the number of co-operators' contracts, the amount of money received by the defendants, and the status of the society, but that in the past all of said contracts had matured within at least three (3) years after the date of the contract, provided all payments had been promptly made, and that the defendants then stated to

the plaintiff that the contracts of the plaintiff would in all probability mature during the year of A. D. 1908, whereupon the plaintiff renewed his statement to the defendants that he would make no further payments unless his contract was matured at once and upon said date of June 15, 1907.''

It is further stipulated that the issues between the parties to the suit are:

I.   Are the agreements or contract of the Co-Operative Home Purchasing Society enumerated in the Statement of Facts valid and binding contracts in law?

II.   Is the plaintiff entitled to recover the $1,300 paid by him to the defendants?

The contracts in question are all alike except in their number.

The face of each one is as follows:

"United States of America.

Number.                                    1000 Dollars.

Co-Operative Home Purchasing Society.

A Copartnership.

Duplicate.

This agreement, made and entered into this 2nd day of March, A. D. 1905, between the Co-Operative Home Purchasing Society of Chicago, Illinois, party of the first part, and Walstein Harlow, of Chicago, party of the second part, witnesseth: that they and each of them will perform the covenants and agreements set forth on the back hereof, which are the essence of this agreement.

In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

Co-Operative Home Purchasing Society,

Applicant:      By Charles H. Commons      [SEAL.]

Walstein Harlow   [SEAL.]''

On the reverse are the conditions which form ''the essence of the agreement.'' They are in great detail; but the principal and significant ones are these:

The party of the second part (Harlow) agrees to pay to the party of the first part, the Co-Operative

Home Purchasing Society (which was the name under which the defendants were doing business) five dollars as a membership fee on signing the contract, and five dollars on or before the tenth of each month thereafter during the continuance of the contract before the maturity of the same as therein defined, and five dollars and interest at the rate of three and three-quarters per cent per annum upon the deferred payments of his indebtedness after such maturity until the full sum of one thousand dollars is placed in the maturity fund, also therein defined; also to pay certain charges on any real estate in which he may acquire an interest under the provisions of the contract, and to pay a fine of five cents for each month of default until all overdue installments and fines have been paid.

It is provided that "if said installments and fines are not paid on or before the fourth consecutive month of default, then the contract shall be wholly null and void, and the party of the first part shall repay to the party of the second part at such time as this contract would have matured in case it had not been cancelled, eighty per cent of the amount standing to the credit of the party of the second part in the maturity fund, time, manner and amount of payment being the essence of the contract."

The party of the first part agrees to pay the party of the second part interest at three per cent. per annum on the average monthly balances to his credit in the maturity fund, the interest to be added to the credit; to deliver to the party of the second part, on or before two hundred and twelve months from the date of this contract, a good title to any real property that may be selected by the party of the second part as thereafter provided in the contract; to number all the "co-operative" contracts in the order of their issuance, in a series beginning with one; to place the sum of five dollars of each monthly payment to be made by the party of the second part, except the first

twelve payments, in a "maturity fund" to be composed of the said sum and the sums paid by other "co-operators" holding contracts; to place the rest of the money paid in and the interest, etc., in an expense fund from which the interest and the expenses of running the business are to be paid; and to use the first sum of one thousand dollars that accumulates in the maturity fund for the benefit of the uncancelled "co-operative contract" not yet matured which bears the lowest number (thereby maturing the same), by putting by its means the holder of such thus matured contract in possession of such real estate as he may select with the approval of the party of the first part, or in paying of an incumbrance on real estate so approved. Said second party is then to execute all instruments pertaining to said real estate that the party of the first part may deem necessary to secure the payment of the sum unpaid by the holder of the contract. The title to such real estate shall be held by a trustee to be named by the party of the first part until paid for by said party of the second part, when it shall be conveyed to said party of the second part. The party of the second part may, if he choose, pay all the balance remaining due on the contract in advance of the time agreed on, and shall then receive the title to said real estate on so doing. No person shall be allowed to hold more than ten co-operative contracts bearing consecutive numbers.

In case the party of the first part fails to make the monthly payments of five dollars for more than four consecutive months of the first twelve payments under the contract, the contract may be cancelled by the party of the first part and all moneys paid by the holders of the same prior to such failure shall belong to the party of the first part as compensation, etc. If the party of the second part fails to make the monthly payments of five dollars more than four consecutive months subsequent to the twelve monthly payments, the contract not having matured, the con-

tract may be cancelled by the party, but eighty per cent. of the payments after the twelfth monthly payment shall be refunded to the party of the second part at the time the contract would have matured had it not been cancelled.

The propositions of the appellant are that the contracts involved are illegal and void, first, because they provide for forfeitures, in certain contingencies, of the money invested; and, second, because they are gambling contracts, forbidden by the Criminal Code of the State. It is in effect conceded by the plaintiff that unless this taint of illegality invalidates the contracts, the judgment should not be disturbed. On the other hand, however, the defendant claims not only that the contracts are legitimate and enforceable, but also that even if they be gambling contracts, no recovery could be had of the money plaintiff had paid in.

The proposition concerning "forfeitures" is not much emphasized by the appellant. We do not consider it forceful. It is true that these contracts do provide for forfeiture, in certain contingencies, of money already paid in, if the payments cease; but so do many contracts of other kinds, never adjudged illegal. People of sound mind, who freely make such contracts, presumably willingly take the risk which they incur. It has been decided in Illinois that installments of purchase money paid on contracts of purchase cannot be recovered back on a forfeiture of the contract by its terms through the fault of the vendee, even where the contract does not specifically provide that they may be retained; *a fortiori* they cannot when it does so provide. Wheeler v. Mather, 56 Ill. 241; Whitaker v. Robinson, 65 Ill. 411; Bryson v. Crawford, 68 Ill. 366.

This "co-operative contract," so-called, is claimed to be a contract of real estate purchase. And that classification of it is perhaps as proper as any other would be which did not recognize it as *"sui generis."* The provisions for forfeiture at all events do not differ

in principle from those generally found in ordinary real estate contracts.

The argument that the contracts involved are gambling contracts under the statutes, and therefore illegal, is strenuously urged by the appellant.  It is based on the proposition that it is uncertain when the contracts will mature, and that it depends on the "chances" of the business; that is, the number of contracts the first party may be able to issue—how soon the thousand dollars named in the contract will be ready for the use of the contract holder.  This, it is claimed, makes the plan a lottery.

It is not necessary for us to pass upon or even remark on the wisdom or unwisdom of the persons who make these investments, further than to say that the early comers are too evidently the favored parties, and the advantages promised later ones are so manifestly at the risk of new investors coming in ever increasing numbers, that criticism on the whole plan might be easy if we felt ourselves under obligation to make it.  But that criticism could not justly, in our opinion, take the form of denunciation of it as a gambling device or a lottery.

It is true that the chances of the business of the "co-operating certificate holders," or, perhaps more exactly, the business of the sellers of these certificates, do enter into the prospects of greater or less advantage to any one certificate holder.  But so, as appellee points out, do similiar chances enter all contracts for future sales of crops to be grown or mines to be worked, or cattle to be bred, or of a thousand other things.  And partnership contracts, of the character of which these contracts partake, frequently make the special interest and advantage of each partner depend on the amount of "good luck" the partnership may have in business.

There is no such element of chance in the "maturing" of the certificates or the amount due on them as there was in those involved in Jacobs v. The People,

117 Ill. App. 195, where we held the scheme described a lottery.

Moreover, to use the language of State Mutual Life Ins Co. v. Newton, 89 Ill. App. 353, "We are of opinion that even conceding that the contracts were issued or made in the conducting of a lottery business, the transaction is not within the letter or spirit of the section of the statute relied on to sustain a recovery." Section 132 of the Criminal Code.

As we said of the contentions in that case, so we say of those in this—"It cannot be said that the money was lost by playing at cards, dice, or any other game, or by betting, or by any wager. That the section quoted was not intended to include money lost in a lottery is apparent. * * * Penal statutes and statutes in derogation of the common law are strictly construed. The money not being recoverable at common law, and the statute containing no provision for its recovery, we are of opinion that no action for its recovery can be maintained."

We do not think the scheme involved in the case at bar a lottery, and we hold, besides, that if it were, the money sued for could not be recovered in this action.

It is also urged that the contract is against "public policy," but that statement certainly involves nothing more than has been discussed. Not all contracts that are unwise and injudicious, nor even all that are demoralizing, are against public policy in such a sense that they are illegal. And in such as are, it does not follow that all money paid on them can be recovered back.

The judgment of the Municipal Court of Chicago is affirmed.

*Affirmed.*