C. W. Kent, Trading as Consumers Co-Operative Sales, Appellee, v. City of Chicago et al., Appellants.

Gen. No. 40,704.

Opinion filed October 3, 1939. Rehearing denied October 18, 1939.

THOMAS J. COURTNEY, State's Attorney of Cook County, *pro se;* BARNET HODES, Corporation Counsel, for appellants; JACOB SHAMBERG, Assistant State's Attorney, and CHARLES P. HORAN, Assistant Corporation Counsel, of counsel.

DITCHBURNE & LOUNSBURY, of Chicago, for appellee; CHARLES E. LOUNSBURY and PHILIP H. KELLEY, both of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

November 23, 1938, plaintiff, Kent, doing business as Consumers Co-operative Sales, filed his bill in equity against Edward J. Kelly, Mayor, Allman, Superintendent of Police, and Courtney, State's Attorney, praying an injunction temporarily pending the suit and permanently upon the hearing, restraining defendants from interfering with plaintiff in the business conducted by him, by causing plaintiff or his employees to be arrested or by seizing his books and records, and for other relief. The bill was duly verified. Plaintiff's motion for a temporary injunction was referred to a master to take the evidence and report his conclusions of law and fact and recommendations as to the temporary injunction within a short day.

The master filed his report February 10, 1939, finding plaintiff had proved the allegations of his complaint and was entitled to an injunction. Objections of defendants to the report of the master having been overruled stood as exceptions and were overruled by the chancellor and an injunction issued. This appeal followed.

The City and State officials contend the scheme adopted by plaintiff in carrying on his business is a lottery, and a court of equity without authority to enjoin defendants from enforcing the law against it. Plaintiff contends the business is not illegal and that the court properly ordered the injunction.

In support of the injunction plaintiff invokes the rule that the purpose of a temporary injunction is to maintain the *status quo* pending a final determination of the cause on the merits, and this, it is said, is all that was accomplished by this injunction. It was not, it is urged, necessary to its issuance that the court should find the business of plaintiff as conducted by him was legal, but only that there was doubt as to plaintiff's right to have the injunction. A large number of cases so holding under the circumstances appearing are cited.

The rule is not applicable to this record. This case was not considered on the well pleaded averments of the bill alone. The cause, as already stated, was referred to a master who took the evidence and reported his conclusions of fact and law. An examination of the report shows that the inquiry was not limited to the question of whether the status should be maintained; but on the contrary, the cause was considered on its merits. We therefore are not limited in our review of this record. The controlling question is whether the business of plaintiff is illegal. If it is, then the court was without power to enjoin the enforcement of the criminal law. The reason for that rule is not, as plaintiff supposes, based upon any distinction between powers of courts of law as distinguished from courts of equity. The fundamental reason for the rule is that the prosecution of a criminal case is carried on in the name of the People of the State. Article IV, sec. 26 [Jones Ill. Stats. Ann. vol. 1, p. 326], of the Constitution provides that the State may not be made a party defendant to any action at law or in equity. Where the suit is in

effect to enjoin the State the court is ordinarily without power to issue an injunction. (*Chicago Public Stock Exchange v. McClaughry,* 148 Ill. 372.) There are exceptions recognized in this and other States. These are, first, when property rights are invaded under color of statutes which are in fact unconstitutional, the prosecution by the public authorities of a claim under the unconstitutional statute is fundamentally without authority and may be enjoined; second, if officers in the enforcement of the law act wholly outside their authority they may upon a proper showing of irreparable injury be enjoined. (*Hagan v. McAdoo,* 113 App. Div. 506, 99 N. Y. Supp. 255; *McGorie v. McAdoo,* 113 App. Div. 271, 99 N. Y. Supp. 47; *Olms v. Bingham,* 116 App. Div. 804, 101 N. Y. Supp. 1106; *Fairmont Athletic Club of Greater New York v. Bingham,* 61 Misc. 419, 113 N. Y. Supp. 905; *Burns v. McAdoo,* 113 App. Div. 165, 99 N. Y. Supp. 51.)

The controlling question upon this appeal therefore is whether the business conducted by plaintiff is illegal. If it is, officers of the law should not be enjoined from enforcing the law.

Plaintiff points out that prior to the bringing of this action two cases were filed against plaintiff and warrants issued; that in each case after trial by a judge of the municipal court, plaintiff was found not guilty. He contends this court should, therefore, hold the business conducted by him to be legal. These particular cases might properly be pleaded in bar of any action brought for the offenses charged in the respective complaints. But this is far from a determination that the business of plaintiff is in fact legal. The prosecution in those cases was in the name of the People. The People had no right of appeal or writ of error. The cases, therefore, did not authoritatively determine the legality of plaintiff's business, and that is the real question here.

Defendant officials contend that the business of plaintiff is in fact a lottery. If so, it is contrary to the

public policy of this State as expressed in the Constitution of 1848, to the effect that the Legislature should have no power to authorize lotteries for any purpose, continued and extended in the Constitution of 1870 to include "gift enterprises." The statute of the State is, therefore, made pursuant to the mandate set forth in the fundamental law of the State, and the statute makes the operation of a business of the kind denounced by the Constitution a misdemeanor. Neither the Constitution nor the statute attempt to precisely define what a lottery is. The apparent intention was not to define except as particular cases should arise. In *Iris Amusement Corp. v. Kelly*, 366 Ill. 256, the Supreme Court suggested a possible definition might be a scheme for the distribution of prizes by lot or chance, and said that a lottery was composed of three elements — a chance, a prize and a price. There is, as all concede, an element of chance in every business and, indeed, in every human transaction. The controlling fact in the determination of whether a given scheme or business is a lottery is determined by the nature of the appeal which the business makes to secure the patronage of its customers. If the controlling inducement is the lure of an uncertain prize, then the business is a lottery.

The business of plaintiff is described by him as a promotional sales and advertising campaign. It is conducted at 330 South Wells street, Chicago. The scheme or method was designed by John W. Sprinkle, who has secured a copyright for it. Plaintiff operates under license from Mr. Sprinkle. In brief, it is this: Plaintiff has contracts with various proprietors of merchandising establishments whereby these proprietors agree to honor certain coupons contained in coupon books issued by plaintiff according to the terms set forth in the books. One of these terms is that the proprietors agree to allow the owner of the coupon a discount upon purchases of the proprietor's goods to the

extent of 10 per cent. These coupon books are sold by plaintiff to its customers for $3 a book upon the customer making written application therefor. Each application contains in a space provided therefor on the application the names and addresses of nine persons who have previously purchased coupon books and signed applications agreeing to co-operate in the sale thereof and to participate in commissions thereby earned. These applications may be procured only from the person whose name appears in the ninth position, or someone acting for him. Upon the purchase of the coupon book and presentation of the application signed by a new applicant whose name becomes the tenth name thereon, the person whose name appears in the first position is paid a commission of ½ of the sales price of the book, or $1.50. The applicant then receives two additional applications containing nine names of previous applicants with their addresses. The name of the person whose name was in first position and who has received $1.50 being omitted, the second name is moved up to first position, the third to the second, the fourth to the third, etc., the new applicant's name appearing in the ninth position. The new applicant agrees in his application that he will give these two applications to others who will execute the same and purchase discount books at $3 each. They each receive two new applications upon which their names appear in the ninth position and the previous applicant's name in the eighth position. The bill avers: ''The plan is based upon a mathematical progression whereby one sale will result in the delivery of two applications which in turn, when executed, will result in two sales and the delivery of four applications which, when executed, will result in four sales and the delivery of eight applications and so on until there have been 512 sales at which time the name of the original applicant will be in the first position on each of 512 applications and he will be entitled to receive a commission of $1.50 on each

coupon book sold as a result of the execution of said 512 applications. It is not necessary, however, that the name of any one applicant appear in first position on all of said applications before said applicant is entitled to receive a commission but he receives the sum of $1.50 upon each coupon book sold as a result of the execution of any application upon which his name appears in first place irrespective of the position of his name on other applications.''

An identification number appears on each application. The applications are issued in duplicate. The original is delivered to the applicant upon his execution thereof and the copy is retained by plaintiff as a part of his permanent records. On each copy retained is indorsed the numbers of the new applications delivered to the applicant, so the plaintiff is able to ascertain at all times the names and addresses of all persons holding applications which have not been executed by others, and the plaintiff is able to ascertain the names and addresses of all applicants holding unexecuted applications upon which any particular applicant's name appears. Plaintiff, on request, furnishes to any applicant a list of names and addresses of subsequent applicants holding unexecuted applications upon which his name appears. He is thus able to take steps to induce other applicants to transfer their applications to persons who will use them or to recover the applications and transfer them to others who will use the same and purchase the discount books. The printing on the application is in part as follows: ''Consumers Co-operative Sales. Save with Our Book of 3,200 One-Cent Discount Coupons. Good until used. Price $3.00. Subscribers Are Eligible to Receive Cash Commissions up to $768.00. Subject to Conditions Below.''

Section 180, par. 406, of the Criminal Code (see Ill. Rev. Stat. 1937, p. 1151 [Jones Ill. Stats. Ann. 37.354]), provides that whoever sets up or promotes any lottery for money, or by way of lottery disposes of any prop-

erty of value, real or personal, ''or under pretense of a sale, gift or delivery of any other property, or any right, privilege or thing whatever, disposes of, or offers or attempts to dispose of any real or personal property with intent to make the disposal of such real or personal property dependent upon or connected with any chance by dice, lot, numbers, game, hazard or other gambling device, whereby such chance or device is made an additional inducement to the disposal or sale of said property, and whoever aids, either by printing or writing, or is in any way concerned in the setting up, managing or drawing of any such lottery, or in such disposal, or offer or attempt to dispose of property by any such chance or device, shall, for each offense, be fined not exceeding $2,000.''

Plaintiff contends that the business as conducted by him amounts to no more than the mere payment of commissions due to customers. Careful consideration of the facts, however, discloses that this is not the real transaction. It is apparent the coupon books (mere slips of paper) are without real value. The contract provides that the merchants will accept these coupons to the amount of 10 per cent of the purchase price in payment for goods, but there is no restriction put on the price upon which the discount is computed. Indeed, one of plaintiff's witnesses who testified she had paid a total of $15 for five different applications, said she had not used the coupons in making any purchase. Another witness said that as a result of his efforts he had received about $100. He had not made any purchases from any of the merchants; it did not seem attractive to him to be able to buy groceries from the grocery on Ridge avenue at a discount. It is apparent that the real consideration upon which the customers were persuaded to invest was that by putting in $3 they had a chance to obtain $768. That the business was apparently conducted in an honest way is, of course, beside the point. In essence the plan is one by which

through payment of $3 for worthless pieces of paper, there is an opportunity to win $768. Nor is the proprietor unaware of the nature of this transaction. The evidence shows that the mails are not used in the solicitation of customers or in the transaction of any other business connected with the enterprise.

Plaintiff argues that the business as conducted by him does not constitute a lottery as that term is usually understood or within the meaning of section 180 of the Criminal Code. He says that conceding the commissions which may become payable to plaintiff's customers constitute a prize, and the payment of $3 for coupon books constitutes a price, still it is clear that the element of chance within the meaning of the definition of a lottery in the statute and in *Iris Amusement Corp. v. Kelly,* 366 Ill. 256, is lacking. Plaintiff cites *Harlow v. Snow,* 147 Ill. App. 369, but the chance element there was only an incidental feature of a contract for the conveyance of real estate. As Lord Hewart in *Director of Public Prosecutions v. Phillips,* [1935] 1 K. B. 391, said in regard to a case similar to this:

"In regard to cases of this nature—I do not mean of this particular species only, but of this genus—one may quote the words of the Lord Justice General in *Barnes v. Strathern* (1): 'There is no limit to the ingenuity of the devisers of projects such as this, and there is, accordingly, no end to the variety of schemes which may constitute a lottery.' (2) It may well be, as Mr. Slade in his able argument has contended, that there is no case exactly on all fours with this case in its detail, but the principle involved is, I think, familiar. The Court has to disengage, if it can, the reality of the transaction from the appearance which for obvious reasons it is made to assume, and when one reads this document headed 'The Farm and Road Engineering Company, Ltd.,' it is, I think, perfectly clear that the real consideration for the sum of I *l.*

which the recipient of the leaflet is invited to part with is not the note case of the price of I *s*. 6 *d*. or thereabouts, but is, as appears to be frankly conceded, the prospect that by laying down that sum of I *l*. upon the terms set out in this leaflet he may find himself the possessor of a sum varying from 10 *s*. up to a maximum of 20,000 *l*. In my opinion, this was not a commercial transaction. The object of the seller and the object of the buyer were not concerned with note cases. They were concerned with the chance which the buyer might procure of obtaining a large sum of money by the operation of persons over whom he had no more control than he has over 'the countless laughter of the sea' (3), which does not laugh when the sun is not shining. If this transaction had been, or could reasonably be regarded as, a commercial transaction, it may be that other considerations might apply; but wherever one looks in this undoubtedly ingenious scheme one finds it impossible to discover anything of a really commercial nature. What one finds everywhere is the chance of drawing a large sum of money of which the maximum in any particular case is 20,000 *l*.''

Plaintiff, however, appeals to the statute and contends that (whatever the rule in other States) in Illinois this statute was never intended to, and does not, prohibit an enterprise of the kind in question, because it is said the statute defines and limits the mechanical device which may be used and is not applicable to any plan in which the particular mechanical device denounced by the statute is not used. We do not so construe the statute. The statute covers not only distribution of prizes by mechanical devices but also any other sort of distribution. In *Public Clearing House v. Coyne,* 194 U. S. 497, 48 L. Ed. 1092, 24 Sup. Ct. 789, at page 514, a plan not unlike this is well described as ''a plan for securing money from a constantly increas-

ing large number for the benefit of a constantly increasing smaller number, with an absolute certainty that when the enterprise should reach its end for any reason, a large number will lose every dollar they have put into it, and in the meantime the smaller number will realize such amounts as may have resulted from the growth of the larger number, but no one can predict what that growth will be.'' We hold the plan as designed and carried out is contrary to the statute and illegal. It was improper to issue an injunction against the officers of the law forbidding the enforcement of the statute. For these reasons the judgment is reversed and the cause remanded with directions to dissolve the injunction.

*Reversed and remanded with directions.*

McSurely and O'Connor, JJ., concur.