(No. 38564.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* EAGLE FOOD CENTERS, INC., Appellant.

*Opinion filed November 24, 1964.*

SCHAEFER and UNDERWOOD, JJ., dissenting.

BOZEMAN, NEIGHBOUR, PATTON & HENSS, of Moline, (VIRGIL BOZEMAN and DONALD A. HENSS, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and RICHARD STENGEL, State's Attorney, of Rock Island, (FRED G. LEACH and GEORGE W. KENNEY, Assistant Attorneys General, and ROBERT L. ELLISON, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After a bench trial in the circuit court of Rock Island County, the defendant, Eagle Food Centers, Inc., was found guilty of conducting a lottery in violation of section

28—1(a)(7) of the Criminal Code of 1961, (Ill. Rev. Stat. 1963, chap. 38, par. 28—1(a)(7),) and was fined $200. The judgment was affirmed by the Appellate Court, (46 Ill. App. 2d 24,) and, upon defendant's petition, we have granted leave to appeal. The single question presented is whether a cash award scheme conducted by defendant was in fact a lottery within the definition of section 28—2 (b) of the Code, which states: "A 'lottery' is any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win such prizes, whether such scheme or procedure is called a lottery, raffle, gift, sale or some other name." Ill. Rev. Stat. 1963, chap. 38, par. 28—2(b).

The facts were stipulated and show that defendant operated 13 retail food markets in Rock Island County. In connection with this business it put into operation a "game" known as "Split the Dollar," the format of which was as follows: Each time a person visited one of defendant's stores he could obtain free of charge a cardboard coin which, upon being split open, revealed one of five numbers, *viz.*, 1-2-3-6-9. When a person had collected the combination of numbers 1-9-6-2 or 1-9-6-3, he became eligible for a cash award of $1 on the first combination or $100 on the second, and was awarded such a prize provided he could answer a question correctly. More difficult questions were asked of those eligible to win the $100 award, but the record does not contain examples of either type question.

It was necessary to visit one of defendant's stores to obtain the split dollars, distribution being limited to one to each person per visit, but it was not necessary for a person to make a purchase or to pass through the check-out counter. The purchase of merchandise added nothing to the chance of winning a prize; food prices had not been raised, nor had the quantity or quality been lowered to

compensate for prizes; and the money given away came from the profits of the store. The purpose of the program was to attract new customers and to stimulate more frequent visits and purchases by established trade.

Prior to the adoption of the Criminal Code of 1961 there was no statutory definition of a "lottery" in this jurisdiction; however, our courts aligned themselves with the universally accepted views: (1) that there are three elements essential to the existence of a lottery, *viz.*, chance, consideration and a prize; and (2) that there is no lottery if any one of these elements or ingredients is missing. (See: *Iris Amusement Corp.* v. *Kelly,* 366 Ill. 256, 261; *Federal Communications Com.* v. *American Broadcasting Co.* 347 U.S. 284, 291, 98 L. ed. 699, 706; 54 C.J.S., Lotteries, sec. 2a; 34 Am. Jur., Lotteries, sec. 3.) The parties here correctly agree that our statute has codified the common law, at least to the foregoing extent, and are also in accord that defendant's promotion embodies the elements of prize and chance. Dispute arises, however, as to whether the element of consideration is present, an issue which, in turn, requires a determination of what the legislature intended when it said "* * * persons who have *paid or promised consideration* for a chance to win such prizes, * * *." (Emphasis added.) Ill. Rev. Stat. 1963, chap. 38, par. 28—2(b).

Our statute does not define "consideration," but courts considering lottery cases have defined it in different ways and many of those definitions are now urged upon us. As is pointed out in 54 C.J.S., Lotteries, sec. 2(c)(2), some authorities hold that the presence or absence of consideration is "measured by the usual test applicable in the law of contracts," and hence need not be a direct monetary consideration, but "may consist of a benefit to the person conducting the scheme, or an inconvenience or disadvantage to the promisee." (*E.g., Furst* v. *A. & G. Amusement Co.* 128 N.J.L. 311, 25 A. 2d 892; *Affiliated Enterprises, Inc.*

v. *Waller,* 40 Del. 28, 5 A.2d 257. Contra: *Common-wealth* v. *Wall,* 295 Mass. 70, 3 N.E.2d 28; *Yellow-Stone Kit* v. *State,* 88 Ala. 196, 7 So. 338.) The People urge that this contract definition and concept of considera-tion must be read into our statute and, on this basis, con-tend that even though there is no direct monetary con-sideration paid, either the increased profits and sales en-joyed by defendant, or, (as the Appellate Court seems to have held,) the time and effort expended by customers to obtain the split dollars, is sufficient to supply the element of consideration. For our part, we do not believe the statute is susceptible of the technical construction urged.

By well settled principles of law, a criminal or penal statute is to be strictly construed in favor of an accused, and nothing is to be taken by intendment or implication against him beyond the obvious or literal meaning of such statutes. (*People* v. *Kirkrand,* 397 Ill. 588; *People* v. *Lund,* 382 Ill. 213.) This is so, according to Sutherland, Statu-tory Construction, 2d ed., vol. II, sec. 520, because "the penal law is intended to regulate the conduct of people of all grades of intelligence within the scope of responsibility," and it is therefore "essential to its justice and humanity that it be expressed in language which they can easily comprehend; that it be held obligatory only in the sense in which all can and will understand it." And apart from the principle of strict construction, we are, as in the case of civil statutes, bound to the rules which require us to give effect to a legislative intention expressed in clear and un-ambiguous terms and forbid us from altering the plain meaning of the words employed by forced or subtle con-struction.

Our statutory definition of a lottery, in clear and un-ambiguous terms, refers to persons who "have paid or promised consideration" for a chance to win a prize. Given their plain and accepted meanings, these words do not admit to a construction or comprehension that the neces-

sary consideration may be found in benefits flowing to the promisor. Their natural purport is, rather, that the consideration must flow from the one who is given the opportunity to win a prize by chance. Similarly, we do not believe that the statutory language admits to a construction that consideration may be found in mere physical inconvenience or disadvantage to the promisee. The words "paid" and "promised" have no reference to consideration of such nature, and in our opinion contemplate money or a thing of value since, as one court has observed, the "general purpose of lottery statutes is to prevent members of the public from being cheated and defrauded of their money in return for a mere chance to receive something which may or may not be of greater value than the sum which they have invested." *Affiliated Enterprises, Inc.* v. *Rock-Ola Mfg. Corp.* (N.D. Ill.) 23 F. Supp. 3.

To borrow a phrase from *Federal Communications Com.* v. *American Broadcasting Co.* 347 U.S. 284, 294, 98 L. ed. 699, 708, where the construction of the Federal lottery statute was being considered, we believe "it would be stretching the statute to the breaking point," to construe it as meaning to embrace the technical concepts of consideration applicable in the law of contracts. Not only would violence be done to the rule of strict construction, but, in our opinion, criminal conduct would be made to depend upon intendment and implication rather than express and understandable legislative direction. In short, if the technical concepts of consideration relied upon by the People are to prevail, the statute must read much plainer than it does and the remedy must come from the legislature rather than the courts. Based upon the language used in our statute to define a lottery, we hold that the element of consideration may not be found in the indirect benefits accruing to defendant, or in the physical efforts expended by its customers to obtain the split dollars.

Under defendant's "game" or "scheme" there was no

"payment" or "promise" of money or other thing of value by any person for a chance to win. No purchase was required, and even those purchasing were required to pay nothing over and above the amount necessary to pay for merchandise actually received. The chance to win was therefore entirely free, and the necessary consideration contemplated by the statute was lacking. Accordingly, the judgments of the circuit court of Rock Island County and of the Appellate Court are reversed.

*Judgments reversed.*

Mr. Justice Schaefer, dissenting.

I agree that the definition of lottery in the new Criminal Code (Ill. Rev. Stat. 1963, chap. 38, par. 28—2(b)) is a codification of the common law. It seems to me that this court's decision under the common-law definition should therefore be considered in the present case. In *Iris Amusement Corp.* v. *Kelly,* 366 Ill. 256, the court considered a scheme called "bank night," in which the only requirement for participation was presence outside the sponsoring motion picture theater and the holders of lucky numbers were awarded cash prizes. The court held that this scheme was a lottery. The opinion stressed that "bank night" involved all the evils of lotteries and that most people would buy tickets admitting them to the theater. The *Kelly* case is close to the present one. Certainly most "Split the Dollar" participants will patronize the defendant's store. This scheme, like bank night, preys on "* * * cupidity, envy, jealousy and temptation—the very things sought to be avoided by that enlightened public policy of most of the world which has outlawed lotteries." *Iris Amusement Corp.* v. *Kelly,* 366 Ill. at 267.

The majority relies on *Federal Communications Com.* v. *American Broadcasting Co.* 347 U.S. 284, which held that radio "give-aways" which conditioned participation on listening to the program were not lotteries. But there the

Court expressly distinguished schemes like the present one which requires the participant to leave his home. Apparently the Court was adopting a test based on substantial effort. (347 U.S. at 295, n. 15.) Even if the statutory definition of lottery requires more than consideration in the contractual sense, the substantial effort required in the present case fulfills the requirements for a lottery.

In my opinion we should follow the *Kelly* case, and the judgment should be affirmed.

Mr. JUSTICE UNDERWOOD joins in this dissent.