**Rudolph INGRAM, Plaintiff,**

**v.**

**CITY OF CHICAGO, a Municipal Corporation of the State of Illinois; Jane M. Byrne, Mayor of the City of Chicago; Richard Brzeczeck, individually and as an Officer of the City of Chicago; and John Does 1 and 2, individually and as officers, employees and/or agents of the City of Chicago, Defendants.**

**No. 82 C 4262.**

United States District Court, N. D. Illinois, E. D.

Aug. 3, 1982.

Lafontant, Wilkins, Jones & Ware, Chicago, Ill., for plaintiff.

1. Ingram obtained a temporary restraining order from this Court on July 13, 1982. For various "fiscal" reasons, however, Ingram has

655

Robert W. Fioretti, Asst. Corp. Counsel, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Rudolph Ingram ("Ingram") brought this motion for a preliminary and permanent injunction to enjoin the City of Chicago, its mayor, police superintendent and two of its police officers from arresting and otherwise harassing vendors engaged in the distribution of the plaintiff's newspaper, the *Crime Snooper*.[1] Ingram seeks injunctive relief in response to the arrest of two of his vendors and the confiscation of his newspaper by Chicago police officers on May 25 and 26, 1982. Although ultimately released, each vendor was initially charged with possession of gambling paraphernalia. Ill.Rev.Stat.1981, ch. 38, § 28–1(a)(5). The paraphernalia included a coupon attached to the *Crime Snooper* through which readers purportedly could win a cash prize if they selected the proper horse or combination of horses in connection with a race held on the day of selection. Plaintiff claims that the harassment of his vendors and the confiscation of his newspapers over the inclusion of this coupon impairs his first, fourth, fifth and fourteenth amendment rights. Defendants seek dismissal of Ingram's motion on the ground that this "free betting" scheme is a sham which violates state law and is not entitled to constitutional protection. For the reasons which follow, plaintiff's motion for preliminary and permanent injunctive relief will be denied and defendants' motion to dismiss will be granted.

The Court may in its discretion grant a motion for preliminary injunctive relief when the moving party satisfies its burden of persuasion that (1) it will suffer irreparable harm in the absence of an injunction and that legal remedies are inadequate to prevent the harm, (2) the threat of harm to the movant outweighs the harm that would

not since printed or attempted to distribute any further copies of the *Crime Snooper*.

result to the opposing party if an injunction issues, (3) the moving party is at least reasonably likely to prevail on the merits, and (4) the public interest will not be disserved by the granting of injunctive relief. *Reinders Bros. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 48–49 (7th Cir. 1980); *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976). Although no one of these factors is determinative, the movant's likelihood of success on the merits is often considered a "threshold requirement for entitlement to preliminary relief." *Kolz v. Board of Education of the City of Chicago*, 576 F.2d 747, 748–49 (7th Cir. 1978). In the present case, Ingram has failed to meet this threshold requirement.

The coupon scheme at issue in this case was purportedly designed as a promotional device for the *Crime Snooper*. Plaintiff alleges that the coupon itself was available from his office without purchase of the newspaper. The evidence shows, however, that no one has attempted to obtain such a free coupon since the offer was made public. The evidence also shows that Ingram has no established mechanism for training the vendors who handle the coupons and advise potential "bettors" how to register their selections. Moreover, Ingram has failed to establish any mechanism for collecting the coupons prior to race time, for selecting the race to which the coupon selections will apply, or for distributing the promised cash prizes to winners. Although over 700 copies of the *Crime Snooper* were sold in late May and early June, 1982, no "bettor" has yet won a race. Indeed, Ingram has been unable to show that he has established any fund or possesses any resources with which to pay winners should they materialize.[2]

In light of these facts, the Court finds that Ingram has failed to meet his burden of showing that it is more likely than not that the coupons in question are entitled to constitutional protection, and the defendants have established the illegal character of these coupons by a preponderance of the evidence. Plaintiff's so-called business scheme, in our view, cannot be characterized as a legitimate promotional device for a bona fide media publication. If such, it would be protected by the First Amendment. Rather, what plaintiff requests this Court to sanction is a transparent off-track betting operation. We are not prepared to afford plaintiff's sham betting enterprise the constitutional protection he seeks. In our view, the constitution does not prevent the City or any of its police officers from controlling the flow of misleading and illegal vehicles of commercial speech. *Cf. Virginia State Board of Pharmacy v. Virginia Consumer Council*, 425 U.S. 748, 771–73, 96 S.Ct. 1817, 1830–1831, 48 L.Ed.2d 346 (1976).

Accordingly, plaintiff's motion for preliminary and permanent injunctive relief is denied, and defendants' motion to dismiss is granted. It is so ordered.

---

2. The actual operation, rather than the form, of this "free" betting scheme distinguishes it from other games sponsored by the *Chicago Sun-Times*, the *Chicago Tribune* and a variety of grocery stores and retail establishments in the Chicago area. Were his a legitimate operation, plaintiff would be entitled to similar protection.