G. A. CARNEY, LTD., *et al.*, Plaintiffs-Appellees, *v.* RICHARD BRZEC-ZEK, Superintendent of Police, City of Chicago, Defendant-Appellant—(The People *ex rel.* Neil F. Hartigan, Intervening-Appellant).

First District (2nd Division)   No. 83—232

Opinion filed August 16, 1983.

Stanley Garber, Corporation Counsel, of Chicago (Jerome A. Siegan and Lynn K. Mitchell, Assistant Corporation Counsel, of counsel), for appellant Richard Brzeczek.

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of counsel), for intervenor-appellant.

Law Offices of Patrick A. Tuite, Ltd., of Chicago (Patrick A. Tuite, of counsel), for appellees.

JUSTICE PERLIN delivered the opinion of the court:

Defendant, Richard Brzeczek, the superintendent of the Chicago police department, and intervenor, Neil Hartigan, the Attorney General of Illinois, appeal a preliminary injunction issued by the circuit court restraining them, their agents, servants and employees, from arresting anyone for possessing and/or selling copies of the *Minority News Review*, a news magazine published by plaintiffs, G. A. Carney, Ltd., and Gregory A. Carney, that contain entry forms for the "Daily Devil," a contest based on the numbers drawn in the Illinois State Lottery. (Ill. Rev. Stat. 1981, ch. 120, par. 1151 *et seq.*) The issue on appeal is whether the issuance of the injunction constituted an abuse of the circuit court's discretion. For the reasons hereinafter stated, we conclude that the court erred in issuing the injunction and reverse.

On October 22, 1982, plaintiffs, G. A. Carney, Ltd., and Gregory A. Carney, its president, filed a complaint for injunctive relief against Richard Brzeczek, the superintendent of the Chicago police department, and his employees, agents or successors, seeking to enjoin them from arresting persons for distributing, selling or possessing copies of plaintiffs' publication, the *Minority News Review*, containing entry forms for the "Daily Devil," a contest based on the numbers selected in the Illinois State Lottery. Plaintiffs' amended complaint alleged that on September 30, October 1 and October 2, 1982, Chicago police officers arrested six persons for distributing, selling or possessing

copies of the *Minority News Review* and charged them with violating provisions of the Criminal Code of 1961 that prohibit gambling in the form of a lottery. (Ill. Rev. Stat. 1981, ch. 38, pars. 28—1(a)(7), 28—3.) On December 9, 1982, the circuit court entered a temporary restraining order enjoining such arrests. On December 16, 1982, a hearing commenced to determine whether a preliminary injunction should be granted. On January 5, 1983, the Illinois Attorney General was allowed to intervene. The hearing concluded on January 17, 1983.

At the hearing, Gregory A. Carney testified that he is the publisher and editor of the *Minority News Review*, a digest of information of interest to Blacks and Hispanics, which has been published periodically since July 1982 and which has an average circulation of 10,000 to 15,000 copies. The *Minority News Review* is distributed by City Wide Distributors to between 20 and 25 vendors for sale to the public. There are no present subscriptions, and no issues have yet been offered for sale directly from newsstands.

Carney stated that as a "circulation stimulant," the vendors' copies of the *Minority News Review* include an entry form for a contest entitled the "Daily Devil," which is promoted as a "free shot at the lottery." The contest allows players to pick various combinations of three or four numbers. The winning numbers for each day are the same numbers drawn that day in the Illinois State Lottery. Participants are eligible to win cash prizes. The "Daily Devil" does not have winning numbers on days the Illinois State Lottery does not draw winning numbers.

To enter the "Daily Devil" contest, a player must use a three-part entry form which is attached to the *Minority News Review*. Copies of the publication with the entry form are available only on issues sold through vendors. The entry forms are not provided with complimentary copies nor will they be available on copies sold at newsstands because, according to the publisher, "they don't have the facilities to take care of that." Carney repeatedly stated that no one may enter the contest without purchasing the magazine at an authorized vendor. A vendor will not honor a blank entry form separate from the magazine.

The cover price of the *Minority News Review* is $1. The vendor will not sell or give away the entry form for the "Daily Devil" separate from the publication. The contest must be played at the time and place of purchase. The vendor, not the purchaser, completes the three-part entry form attached to the publication and makes "the proper entries for the reader and then give[s] the reader a copy of that particular entr[y] form." The vendor retains the second copy for his own

records and sends the third copy to the publisher.

If a contestant wins, he must return to the vendor where he played the "Daily Devil" to collect his prize. The vendor pays the winnings to the contestant from the proceeds of his sale of the magazine. After deducting his commission of 20 cents per copy, the vendor sends the balance of the net proceeds to the distributor. The distributor, in turn, deducts his commission of five cents per copy and gives the remaining funds to the publisher. The commissions are not affected by the outcome of the contest. Carney testified that he paid approximately $6,000 in prizes from July 1982 to September 30, 1982.

The contest rules printed on the three-part entry form state: "No Purchase Necessary. Free entry blanks can be obtained at the office of the publisher. No charge or obligation." The publisher's address does not appear on the entry form itself. The form provides that "employees of the publication and KK Features and their families are not eligible ***." The address of KK Features, from whom Carney acquired the right to use the copyright "Daily Devil" contest, is listed on the entry form as Greenbrae, California.

The "office" of the publisher listed in the magazine, 20 East Delaware, Apartment 1105, Chicago, Illinois, is Carney's studio apartment in a residence hotel. The name *Minority News Review* does not appear on the building directory. No telephone number for the publication may be found in the Chicago telephone directory. The *Minority News Review* has no employees and its contract writers do not work at Carney's apartment.

Carney testified that if a person came to his office to obtain a free entry form when he was not in, that person could leave a message with the desk clerk and Carney would make arrangements to meet him later. Carney, however, will not send or accept any entry forms by mail. Cheryl Tillman, the manager of the hotel where Carney resides, testified that the hotel does not and will not distribute free "Daily Devil" entry forms for the publisher. She has instructed her staff not to assist anyone in entering the contest or in locating the "office" of the *Minority News Review*. An investigator for the Illinois Attorney General's Office corroborated Tillman's testimony.

Although he has sold more than 100,000 copies of the *Minority News Review*, Carney testified that he has given away only "two or three" free entry forms for the "Daily Devil." In each instance, Carney filled out the form for the contestant. (Free entry forms must be completed at the office of the publisher.) Carney, however, had no records of the names, addresses, entry numbers or copies of the free entry forms he distributed. He stated that he kept records of winning

entries only, which did not include any of the free entry forms he gave away. Carney could not estimate how many persons had played the "Daily Devil" since the contest began.

Two police officers testified that on September 30 and October 1, 1982, they arrested several persons for distributing, selling or possessing copies of the *Minority News Review* with the entry form for the "Daily Devil" attached. Both officers stated that they would not arrest anyone for possessing or selling the magazine without the entry form.

Carney testified further that he stopped publishing the *Minority News Review* from October 3, 1982, until December 12, 1982, three days after the temporary restraining order was issued, because vendors, fearing arrest, refused to accept the magazine for sale. When he ceased publication, Carney lost his advertising revenue.

At the conclusion of the hearing, the circuit court held that the "Daily Devil" was not an illegal lottery because it lacked consideration. The court found that a contestant could obtain a free entry form from the office of the publisher. The court ruled that plaintiffs were entitled to a preliminary injunction. A written order incorporating that decision was entered on January 27, 1983. On February 8, 1983, this court granted appellants' motion to stay enforcement of the injunction pending appeal.

Appellants contend that plaintiffs failed to establish their right to a preliminary injunction. We must agree.

■ At the evidentiary hearing, plaintiffs had the burden of proving that they were entitled to injunctive relief. To meet this burden, plaintiffs were required to establish by a preponderance of the evidence that (1) they possessed a certain and clearly ascertained right which needed protection; (2) they would suffer irreparable injury without the protection of the injunction; (3) there was no adequate remedy at law for the injury; and (4) they were likely to succeed on the merits. *Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 499, 422 N.E.2d 1166.

■ The trial court is vested with a large measure of discretion in the granting or refusal to grant a preliminary injunction and its determination will not be overturned on review absent a showing of the abuse of that discretion. (*Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1144-45, 441 N.E.2d 927.) A preliminary injunction is an extraordinary remedy and should be granted with the utmost care. 109 Ill. App. 3d 1140, 1145.

The sole role of an appellate court in addressing the grant or refusal of an interlocutory order is restricted to a determination of

whether the trial judge correctly exercised his broad discretionary powers. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414.) Thus, a court of review looks to the sufficiency of the evidence not to determine controverted rights or to decide the merits of the case, but only for the limited purpose of ascertaining whether the trial court abused its discretion. (*Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1145, 441 N.E.2d 927.) In our judgment, the trial court in this instance abused its discretion.

Assuming, without deciding, that plaintiffs possessed a certain and clearly ascertained right which needed protection, they failed to establish by a preponderance of the evidence any of the other three elements necessary for the issuance of a preliminary injunction.

With respect to the requirement of irreparable injury, Carney testified that he had to cease publication of the *Minority News Review* for 10 weeks because the vendors, fearing arrest for gambling, refused to carry his magazine. Since he could not publish his magazine, Carney lost his advertisers. As the Attorney General has noted in his brief, however, Carney could have continued to publish the *Minority News Review* without the "Daily Devil" entry form attached and filed an action for a declaratory judgment to determine whether the contest was a legitimate promotional device. The availability of this action also indicates that Carney had an adequate remedy at law.

The principal issue in this appeal, however, is whether Carney demonstrated that he was likely to succeed on the merits. The resolution of that issue depends on whether Carney was conducting an illegal lottery.

A person commits gambling when he "[s]ets up or promotes any lottery or sells, offers to sell or transfers any ticket or share for any lottery." (Ill. Rev. Stat. 1981, ch. 38, par. 28—1(a)(7).) A "lottery" is defined as "any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win such prizes, whether such scheme or procedure is called a lottery, raffle, gift, sale or some other name." (Ill. Rev. Stat. 1981, ch. 38, par. 28—2(b).) Thus, the essential elements of any lottery are chance, consideration, and a prize. *People v. Eagle Food Centers, Inc.* (1964), 31 Ill. 2d 535, 538, 202 N.E.2d 473.

Carney does not dispute that two of these elements, chance and a prize, are present in his "Daily Devil" contest. Carney, however, maintains that no consideration was involved because the three-part entry form for the "Daily Devil" was provided "free" with the purchase of the *Minority News Review*, and because free entry forms were available at the office of the publisher.

With respect to Carney's first argument, the Attorney General refers us to the opinion in *People v. Jones* (1981), 98 Ill. App. 3d 489, 424 N.E.2d 683. In *Jones*, the defendant was convicted of the offense of collection of a fee in a wagering contest. (Ill. Rev. Stat. 1979, ch. 8, par. 37—39.1(a).) The evidence disclosed that in return for a $5 fee to join defendant's "social club," a "member" could place wagers on horse races. On appeal from his conviction, defendant argued that the State was required to prove that the services were strictly for the purpose of gambling and he noted that there was some evidence that legitimate services were also offered by the club as part of the membership fee. The court rejected this argument, stating that "even if the payment of the $5 fee was shown to have entitled the payor to participation in other activities it is clear that the payment also constituted an indirect fee for the placement of a wager and thus violated the statute." 98 Ill. App. 3d 489, 492.

Similarly, the $1 paid for the *Minority News Review* is an indirect payment to participate in a game of chance, even though it entitles the purchaser to a copy of the magazine. That the magazine itself may be worth the purchase price does not alter this conclusion. *Thomas v. People* (1871), 59 Ill. 160; *Dunn v. People* (1866), 40 Ill. 465.

■ The controlling fact in the determination of whether a given scheme or business is a lottery is determined by the nature of the appeal which the business makes to secure the patronage of its customers. If, as here, the controlling inducement is the lure of an uncertain prize, then the business is a lottery. (*Kent v. City of Chicago* (1939), 301 Ill. App. 312, 316, 22 N.E.2d 799. Accord, *Almy Manufacturing Co. v. City of Chicago* (1916), 202 Ill. App. 240, 244-45.) We note in this regard that the contest rules provide that although there is "[n]o limit to the number of entries," "[o]nly one selection [is] allowed per entry blank." It would appear that persons buying multiple copies of the same issue are paying consideration to enter the contest and not to read the magazine.

Carney also contends that no consideration need be paid to enter the contest because free entry forms were available at the office of the publisher. The evidence presented at the hearing strongly suggests that the offer of free entry forms was illusory. The publisher's name and address do not appear on the three-part entry form itself; there is no listing for the *Minority News Review* in the Chicago telephone directory or in the directory of the building where Carney resides; the hotel staff does not and will not distribute free entry forms for the publisher and will not assist anyone in entering the contest or

in locating the "office" of the *Minority News Review*; Carney, who has no employees, is not always at his office during normal business hours and will not send free entry forms through the mail; and although he claimed to have given away two or three free entry forms (an infinitesimally small number in relation to the number of issues sold), Carney could not produce any records to substantiate even this claim.

In determining whether consideration is required to play the "Daily Devil," we do not "inquire into the the theoretical possibilities of the scheme, but *** examine it in actual practical operation." (*Iris Amusement Corp. v. Kelly* (1937), 366 Ill. 256, 263, 8 N.E.2d 648.) In our judgment, the obstacles to obtaining a free entry blank are so formidable, the publisher's offer of a free entry blank must be regarded as chimerical. This distinguishes the present contest from the "Magic Zingo" contest sponsored by the Chicago Tribune or the one upheld by our supreme court in *People v. Eagle Food Centers, Inc.* (1964), 31 Ill. 2d 535, 202 N.E.2d 473.

Finally, we observe that under the contest rules, only one free entry blank "per request per family per edition" is available. However, a contestant who purchases multiple copies of the same edition of the *Minority News Review* may submit several entry forms. Thus, it would appear that purchasers of multiple copies have a better chance to win than those persons who may have obtained a single free entry form. This is further evidence that the contest is an illegal lottery. *Iris Amusement Corp. v. Kelly* (1937), 366 Ill. 256, 8 N.E.2d 648.

■ For the foregoing reasons, we conclude that in this instance the circuit court erred in issuing the preliminary injunction. Accordingly, we reverse.

Reversed.

DOWNING, P.J., and HARTMAN, J., concur.