**DREEM ARTS, INC., an Illinois corporation, et al., Plaintiffs,**

**v.**

**CITY OF CHICAGO, et al., Defendants.**

No. 85 C 10102.

United States District Court,
N.D. Illinois, E.D.

May 19, 1986.

Robert A. Stevenson, Westchester, Ill., for plaintiffs.

Robert W. Fioretti, Diane Larsen, James D. Montgomery, Chicago, Ill., for defendants.

**MEMORANDUM OPINION**

GRADY, District Judge.

Currently before the court is the motion of defendants City of Chicago, Chicago Police Department and unnamed agents (collectively "defendants") to dismiss the amended complaint of plaintiffs Dreem Arts, Inc. ("Dreem Arts") and Night Moves Publishing, Inc. ("Night Moves") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, we convert defendants' motion into one for summary judgment and grant summary judgment in favor of defendants.

*Procedural History*

Plaintiffs filed a § 1983 complaint on December 4, 1985, against defendants, in which they sought an injunction prohibiting defendants from confiscating newspapers published by Night Moves entitled *Nightmoves.* We allowed plaintiffs to amend their complaint by January 3, 1986. When plaintiffs failed to file an amended complaint or appear for a status hearing, we dismissed the case for want of prosecution on January 28, 1986. Subsequently, we granted plaintiffs' motion to vacate the dismissal and, over defendants' objections, allowed plaintiffs to file an amended complaint and supporting memorandum. We

---

asked the parties to file briefs on the issue of whether a game contained in *Nightmoves* called "Pick and Play" constituted a lottery and, if so, whether plaintiffs had violated the Illinois gambling laws. We indicated that if we found such laws were violated, we would grant summary judgment in favor of defendants. Thereafter, defendants filed a motion to dismiss with supporting exhibits and affidavits attached. Plaintiffs have not filed anything in response and informed the court they will not do so. Because we find the affidavits and exhibits dispositive of the present cause, and since plaintiffs have been given an opportunity to respond to defendants' exhibits, we convert defendants' motion to dismiss to one for summary judgment pursuant to Rule 12(b).[1]

## FACTS

According to the amended complaint, Dreem Arts, an Illinois corporation, supplies "advertisements" for *Nightmoves.* Amended Complaint ¶¶ 1–3. *Nightmoves* costs $2.00. Response in Opposition to Plaintiffs' Memorandum in Support of Amended Complaint ("Defendant's Opposition Memorandum") at 2. Each *Nightmoves* paper contains the game "Pick and Play," a copy of which has been attached by defendants to their memorandum as Exhibit A. To play the game, one selects the winners of various upcoming match-ups between professional or college football teams with a "point spread" published next to the teams. Contestants mail in an entry blank indicating the teams they select to win. Cash prizes up to $1,000.00 are awarded if a contestant picks ten winning teams; other cash prizes are awarded if at least four teams win. The "Contest Rules Instructions" provide that "entry forms can be mailed or returned to news stand where paper was purchased." Further, they provide that "[p]rizes will be awarded at office of publisher room 1100, 105 W. Madison St. or at news stand where *Night-*

*moves* was purchased, at direction of reader." Finally, the instructions provide:

Free contest entry forms are available at office of publisher. Please send stamped self-addressed envelope and free entry form will be mailed to you; a reasonable hand drawn facsimile can be used—in addition to stores and news stands, copies of *Nightmoves* are available at Chicago public libraries for your inspection (no limit to number of contest entries.) ... No purchase necessary— tax liabilities for all prizes are the sole responsibility of winners.

According to the amended complaint, officers from the Chicago Police Department on an unspecified date "confiscated [*Nightmoves* ] newspapers from numerous individuals including based on information and belief certain individuals, to wit: George Mayfield and Daniel Flowers and charged said men with gambling pursuant to applicable Illinois law." Amended Complaint, ¶ 4. It continues: "based on information and belief the two aforementioned are not the only distributors of the newspaper who have been arrested and have had the newspaper confiscated." *Id.,* ¶ 5. Beyond the fact that Mayfield and Flowers were "distributors," there is no explanation of the relationship between them and plaintiffs. Nevertheless, plaintiffs brought this § 1983 action after criminal charges filed against Mayfield and Flowers were dismissed. *Id.,* ¶ 6. Plaintiffs claim that the City and its police department are harassing them in violation of their First Amendment rights and they seek "emergency injunctive relief requiring Defendant [sic] to cease and desist these seizures...." *Id.,* ¶ 9. Specifically, plaintiffs claim the seizures have "no basis in fact and law" and the financial hardship they are suffering because they have ceased distribution chills their "ability to disseminate news and editorials which right is guaranteed" under the First Amendment. *Id.,* ¶ 15.

---

**1.** Given the fact that we find the gambling issue in this case to be dispositive, it is unnecessary for us to address defendants' other arguments.

Defendants argue "Pick and Play" constitutes a lottery and that plaintiffs have violated the Illinois gambling statute. In one of defendants' two affidavits, Officer Charles Loving, a member of the police department's "Gambling Unit of the Organized Crime Division," testified he visited the office of *Nightmoves'* publisher, Night Moves, "during regular business hours." Officer Loving testifies there was no sign for the Night Moves office, that no Night Moves employees were present, and that he was unable to obtain a free entry form; rather, he was told by a "male subject" on the premises to leave his name and address and a "Pick and Play" form would be sent to him. Defendants' Opposition Memorandum, Exh. B. The affidavit does not indicate whether Officer Loving left his name and, if so, whether he received a free "Pick and Play" form.

In the second affidavit, Michael Fera, a detective with the Chicago Police Department's Vice Control Section, testified he contacted the main Chicago Public Library and was told that the library had never subscribed to the newspaper. Detective Fera received similar responses from twenty-three library branches. Defendants' Opposition Memorandum, Exh. C.

As previously mentioned, plaintiffs have not offered any evidence to explain or contradict the affidavits, despite being given the opportunity to do so. Instead, they apparently have chosen to rest on their assertion that because free copies of "Pick and Play" were available at libraries and the publisher's office, "Pick and Play" did not constitute a lottery but was a promotional device entitled to First Amendment protection.

## DISCUSSION

Under the Illinois gambling statute, Ill. Ann.Stat., ch. 38 § 28–1(a), "[a] person commits gambling when he ... (7) sets up or promotes any lottery or sells, offers to sell or transfers any ticket or share for any lottery...." A lottery is defined as "any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised considera-tion for a chance to win such prizes, whether such scheme or procedure is called a lottery, raffle, gift, sale or some other name." *Id.*, § 28–2(b). The parties agree that the three essential elements of a lottery are chance, consideration and a prize. *See People v. Eagle Food Centers, Inc.*, 31 Ill.2d 535, 202 N.E.2d 473, 475 (1964); *G.A. Carney, Ltd. v. Brzeczek*, 117 Ill.App.3d 478, 72 Ill.Dec. 881, 453 N.E.2d 756 (1st Dist.1983). They also agree that the controlling question in this case is whether contestants paid consideration to play "Pick and Play."

In *Carney*, the court addressed this precise issue in a similar factual setting. There, the plaintiff, a newspaper publisher, sought to enjoin various city and police officials from arresting persons possessing or selling the plaintiff's newspaper which contained a game. The trial court denied the injunction. On appeal, the publisher argued the trial court erred in concluding that the publisher was not likely to succeed on the merits. The publisher did not dispute that two of the three lottery elements, chance and a prize, were present. But, the publisher argued, "No consideration was involved because the three-part entry form for the [game] was provided 'free' with the purchase of the [newspaper], and because free entry forms were available at the office of the publisher." 72 Ill.Dec. at 885, 453 N.E.2d at 760. The court rejected the publisher's consideration argument:

> The evidence presented at the [injunction] hearing strongly suggests that the offer of free entry forms was illusory. The publisher's name and address do not appear on the three-part entry form itself; there is no listing for the [newspaper] in the Chicago telephone directory or in the directory of the building where [the publisher] resides; the hotel staff ... will not assist anyone in entering the contest or in locating the 'office' of the [newspaper]; Carney, who has no employees, is not always at his office during normal business hours and will not send free entry forms through the mail; and although he claimed to have given away

two or three free entry forms (an infinitesimally small number in relation to the number of issues sold), Carney could not produce any records to substantiate even this claim.

*Id.* 72 Ill.Dec. at 886, 453 N.E.2d at 761. Thus, the court concluded that contestants paid consideration to play the game by buying the newspaper because "the obstacles to obtaining a free entry blank are so formidable, the publisher's offer of a free entry blank must be regarded as chimerical." *Id.*

Likewise, the offer of a free entry blank in this case is equally illusory because the obstacles to obtaining one are formidable. Based on the uncontradicted testimony of the affiants, it appears Night Moves, like the plaintiff in *Carney,* does not keep regular business hours. Another similarity to the facts in *Carney* is that persons in the building where Night Moves' offices are located cannot secure free entry blanks for those who inquire. Further, contrary to plaintiffs' bare assertions, the Chicago Public Library does not carry copies of the newspaper. We note also that plaintiffs have offered no evidence that they do, in fact, send out free entry blanks.

Further, based on the "Pick and Play" entry blank itself, it appears that plaintiffs have purposely made it more difficult to obtain free entry forms than to pay the $2.00 news stand price of *Nightmoves.* For example, based on the "Pick and Play" instructions, it appears that news stand vendors cannot distribute free copies of the entry form; only the Night Moves office itself may do so. *Compare Eagle Food Centers, supra,* 202 N.E.2d at 475 (free entry forms available at same place as forms given with purchase). Moreover, while the instructions specifically direct paying contestants to return their winning forms by mail or in person to the news stand where they purchased *Nightmoves,* holders of "free" winning entries are told only to mail them—but an address to which forms should be mailed is not given.

In sum, based on the evidence produced by defendants and plaintiffs' failure to con-

tradict or explain that evidence, it appears to us that the assertion that "free" entry blanks for "Pick and Play" are available is a strategem designed to hide the fact that plaintiffs were operating a lottery. We therefore find that obtaining free copies was inordinately difficult, that contestants in fact paid consideration by purchasing *Nightmoves* for $2.00, and, therefore, that "Pick and Play" constituted a lottery. As a result, the newspaper loses its First Amendment protections and nothing in the Constitution prevents the City or its police officers from confiscating copies of it. *Ingram v. City of Chicago,* 544 F.Supp. 654, 656 (N.D.Ill.1982). Accordingly, plaintiffs' constitutional rights were not violated by defendants' enforcement of the Illinois gambling statute.

**CONCLUSION**

There remains no genuine issue of material fact. We convert defendants' motion to dismiss into one for summary judgment and grant summary judgment in favor of defendants.