

OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

JOHN CORNYN

February 2, 2000

Mr. Brett Bray
Division Director
Motor Vehicle Board
Texas Department of Transportation
200 East Riverside Drive, Building 150
Austin, Texas 78768-2293

Opinion No. JC-0174

Re:  Whether a promotional contest that requires entrants to take a "test drive" constitutes a lottery under Texas law  (RQ-0106-JC)

Dear Mr. Bray:

You ask whether an automobile dealer's promotional contest that requires an entrant to participate in a test drive as a condition of entry constitutes a "lottery" under section 47.03 of the Penal Code. For the reasons set forth below, we conclude that it does not.

As you describe the scheme, an individual who visits an automobile dealer is eligible to enter a drawing for a prize on the condition that he or she take a test drive in one of the dealer's vehicles. Section 47.03 of the Penal Code provides that a person commits a Class A misdemeanor "if he intentionally or knowingly," inter alia, "for gain, sets up or promotes any lottery." TEX. PEN. CODE ANN. § 47.03 (Vernon 1994). "Lottery" is defined to mean "any scheme or procedure whereby one or more prizes are distributed by chance among persons *who have paid or promised consideration* for a chance to win anything of value, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or some other name." *Id.* § 47.01(7) (Vernon Supp. 2000) (emphasis added). The statute codifies the common law definition of "lottery" as encompassing any "scheme or plan which provides for a distribution of [1] prizes by [2] chance among those who have paid, or agreed to pay, a [3] consideration for the right to participate therein." *City of Wink v. Griffith Amusement Co.,* 100 S.W.2d 695, 698 (Tex. 1936). *See also Federal Communications Comm'n v. American Broadcasting Co.,* 347 U.S. 284, 290 (1954). In the situation you present, there is no dispute that there is an award of a prize by chance. The issue we must resolve is whether the act of taking a test drive in a dealer's vehicle constitutes the *payment of consideration* from customer to dealer.

State courts are divided on the issue of what kind of consideration is required under a statute prohibiting lotteries. Some hold that the requisite consideration is the same as that for a binding contract. *See, e.g., State v. Safeway Stores,* 450 P.2d 949 (Wash. 1969) (en banc). Others hold that the consideration required for lottery purposes is greater than that necessary for a contract. *See Cudd*

*v. Aschenbrenner*, 377 P.2d 150 (Or. 1962) (en banc). Texas courts have said relatively little on the subject. In *Brice v. State*, 242 S.W.2d 433 (Tex. Crim. App. 1951), the court found that there was no lottery when the only consideration required of a participant in a contest was to register at the store. Although the merchant clearly received the benefit of increased sales, customers could not be said to have "*paid a consideration* by merely stepping into the house and signing their names." *Id.* at 435 (emphasis added). Likewise, in *State v. Socony Mobil Oil Co.*, 386 S.W.2d 169 (Tex. Civ. App.–San Antonio 1964, writ ref'd n.r.e.), the court held that merely visiting a service station to request a bingo card does not amount to sufficient consideration for a contest to be deemed a lottery. Thus, Texas courts have concluded that the mere act of entering a place of business and making a minimal effort to participate in a contest does not constitute *payment of consideration*. Clearly, however, taking a test drive in a vehicle involves something more than minimal effort. Thus, we turn to the decisions of other states for more apt analogies.

Most of the cases from the late 1930s and early 1940s involve "bank night." In this contest, customers of a motion picture theater are registered for a drawing when they purchase tickets for a show. Typically, a person can enter the contest without purchasing a ticket, but since the rules of the contest generally specify that the prize must be claimed within a short time of the drawing, patrons of the theater are given a distinct advantage. Some courts hold that the mere "requirement of registration and appearance within the theater within a specified time after the announcing and drawing" is "a sufficient consideration to put the scheme within the definition of a lottery." *Stern v. Miner*, 300 N.W. 738, 740 (Wis. 1941); *see also State ex rel. Draper v. Lynch*, 137 P.2d 949, 953 (Okla. 1943). In these cases, the meaning of "consideration" for purposes of the anti-lottery statutes is the same as that "applicable to the law of contracts." *State v. Jones*, 107 P.2d 324 (N.M. 1940). As the court said in *State v. Wilson*, 196 A. 757 (Vt. 1938):

> Ordinarily, a detriment incurred by a promisee at the request of a promisor is a sufficient consideration to support a contract. [I]t may be an inconvenience, no matter how small. . . . So here, it may be said that the acts of registration, attendance in the immediate vicinity of the theater, or in the lobby thereof, on the appointed evening, and entry within the stipulated time after the announcement, were acts done, and a detriment incurred in response to a promise to award a prize.

> . . . To pay a consideration is to furnish or give a consideration. The word "pay" used in this connection may be taken to include the doing of an act or the exercise of a forbearance. It is not apparent why any consideration which would be sufficient to support a contract will not be equally effective if given in return for a chance to win a prize.

*Id.* at 760 (citations omitted); *accord, Furst v. A. & G. Amusement Co.*, 25 A.2d 892, 893 (N.J. 1942).

On the other hand, other state courts found that the typical "bank night" does not require the consideration necessary to satisfy the definition of a "lottery." In *State ex rel. Stafford v. Fox-Great Falls Theatre Corp.*, 132 P.2d 689 (Mont. 1942), the court said that, where an anti-lottery statute requires a contest entrant to "pay any valuable consideration," the phrase does not embrace the "slight detriment" of having to claim the prize within one minute of the drawing. *Id.* at 696-97. "Consideration," another court said, must "be a consideration having a pecuniary value." *State ex rel. Big Chief Corp.*, 13 A.2d 236, 239 (R.I. 1940). According to the Supreme Judicial Court of Massachusetts, "any technical and non-valuable consideration, 'whether registration of the name or anything else,'" is not sufficient consideration to make a scheme a lottery. *Commonwealth v. Wall*, 3 N.E.2d 28, 30 (Mass. 1936); *accord, People v. Shafer*, 289 N.Y.S. 649 (N.Y. Co. Ct.), *aff'd*, 6 N.E.2d 410 (N.Y. 1936).

Finally, some courts make a distinction on the basis of whether the proceeding is civil or criminal. Although "bank night" is not a lottery under the criminal law because it is not evidenced by a monetary consideration, a contest winner who was outside the theater can enforce the theater owner's obligation under ordinary contract principles. *See St. Peter v. Pioneer Theatre Corp.*, 291 N.W. 164, 170 (Iowa 1940); *see also State v. Stern*, 275 N.W. 626, 629 (Minn. 1937).

Beginning in the 1950s, most cases that deal with the issue of consideration for purposes of an anti-lottery statute involve contests sponsored by gasoline stations or supermarkets. In one of the earliest of these, *Knox Industries v. State ex rel. Scanland*, 258 P.2d 910 (Okla. 1953), the Supreme Court of Oklahoma considered a scheme that required merely that participants visit a service station and ask for a ticket. The court concluded that the contest was a lottery because (1) it required the "expenditure of time and inconvenience"; (2) it subjected entrants "to the sales appeal of the merchandise offered for sale"; and (3) it required participants to claim the prize within certain specified hours. *Id.* at 914. Likewise, a Florida court found sufficient consideration where participants in a contest were required to register their name and address in a supermarket, have a card punched on a weekly basis, and be present in the store's parking lot within fifteen minutes of the drawing. *See Blackburn v. Ippolito*, 156 So.2d 550, 554-55 (Fla. Dist. Ct. App. 1963), *cert. denied*, 166 So.2d 150 (Fla. 1964); *see also Boyd v. Piggly Wiggly S. Inc.*, 155 S.E.2d 630, 641 (Ga. Ct. App. 1967). And the Supreme Court of New Jersey, in an oft-cited decision, held that if consideration is sufficient to sustain a simple contract, it is sufficient to constitute the third element of a lottery. *See Lucky Calendar Co. v. Cohen*, 117 A.2d 487, 495 (N.J. 1955). The requisite consideration need not be of intrinsic value, the court said; rather, quoting Williston on Contracts, "'a rose, a hawk, or a peppercorn will suffice.'" *Id.* (citation omitted). In *Lucky Calendar*, merely completing a coupon and arranging for its deposit in a box just inside the store's entrance satisfied the requirement. *See id.* at 496.

A clear example of this position has been manifested by the Supreme Court of Washington. In *State v. Safeway Stores*, 450 P.2d 949 (Wash. 1969) (en banc), the court considered a supermarket's "bonus bingo" game. In an en banc decision, the court found sufficient consideration in "the time, attention, and the efforts of countless persons in studying Safeway advertising and in making at least one trip to a Safeway store." *Safeway Stores*, 450 P.2d at 956. In *State v. Reader's*

*Digest Association*, 501 P.2d 290 (Wash. 1972) (en banc), the court reasoned that even when no trip to a retail establishment was required, entrants expended "time, thought, attention and energy." *State v. Reader's Digest Ass'n*, 501 P.2d at 297-98. Such effort constitutes "a detriment to the participant," while the corresponding increase in sales constitutes a benefit to the promoter of the contest. *Id.* at 298; *see also Mobil Oil Corp. v. Danforth*, 455 S.W.2d 505 (Mo. 1970) (en banc); *People v. Brundage*, 162 N.W.2d 659 (Mich. 1968).

By contrast, a number of state courts in the post-"bank night" era have found that the simple consideration required for a contract is not sufficient under the anti-lottery statutes. In *State v. Bussiere*, 154 A.2d 702 (Me. 1959), for example, the court said that consideration must have a pecuniary value paid directly or indirectly by some participant. *See Bussiere*, 154 A.2d at 707. In Rhode Island, a drawing for a door prize at a food exhibition was held not to be a lottery where the only consideration required to participate was to attend as a spectator and fill out a card. *See Finch v. Rhode Island Grocers Ass'n*, 175 A.2d 177 (R.I. 1961). And in *People v. Eagle Food Centers, Inc.*, 202 N.E.2d 473 (Ill. 1964), the Supreme Court of Illinois considered a supermarket game called "split the dollar." The contest required a participant to visit the store to obtain his "split dollar," and only one was awarded for each visit. The court noted that the language of the anti-lottery statute required a person to pay or promise consideration "for a chance to win a prize." *Eagle Food Ctrs.*, 202 N.E.2d at 475. Such language did not "admit[] to a construction that consideration may be found in mere physical inconvenience or disadvantage to the promisee." *Id.* Rather, it contemplated "money or a thing of value." *Id.* at 475-76. "'[I]t would be stretching the statute to the breaking point,'" the court found, "to construe it as meaning to embrace the technical concepts of consideration applicable in the law of contracts." *Id.* at 476 (citation omitted). Thus, consideration could "not be found in the indirect benefits accruing to defendant, or in the physical efforts expended by its customers to obtain the split dollars." *Id.*

The clearest rejection of the contract theory of consideration was voiced by the Supreme Court of Oregon in *Cudd v. Aschenbrenner*, 377 P.2d 150 (Or. 1962) (en banc). The contest in that case required participants to appear in the store for an initial registration, to have their coupons validated each week, and then to be present in the store's parking lot at the time of the drawing. The court observed that the purpose of the anti-lottery statutes were "to prevent the impoverishment of the individual and its attendant evils." *Id.* at 155.

> Unless a scheme requires that (1) a participant part with a consideration, and (2) the consideration be something of economic value to him, participation therein can rob him neither of his purse nor his accumulated worldly goods. . . . We do no violence to the law of contracts when we hold that a lottery contemplates a greater consideration than is generally required to support a contract. . . . We merely hold that a lottery is a special kind of contract which requires a special kind of consideration—consideration which can impoverish the individual who parts with it.

*Id.* The court acknowledged that a "substantial number of cases in various jurisdictions have held to the contrary," *id.* at 156, but that they invariably engage in "mechanical application of preconceived notions of 'prize, chance and consideration' without attempting to look behind those words in order to discover what concepts their users intended to convey." *Id.* (citation omitted). The scheme at issue failed the test because "there is no consideration which is in any way harmful to the participant. The participant parts with nothing of any value to himself." *Id.* at 159.

In the most recent decision involving the issue before us, the Supreme Court of Utah quoted *Cudd* with approval. In *Albertson's Inc. v. Hansen*, 600 P.2d 982 (Utah 1979), the situation before the court involved a "double cash bingo" game conducted by a supermarket. The only consideration furnished by a participant, the court said, are his "time, effort, inconvenience, and exercise of choice." *Id.* at 985. "A majority of courts in other jurisdictions have found such elements to fall short of the requirements of valuable consideration."[1] *Id.* To hold otherwise, the court said,

> would invalidate any distribution-by-chance scheme for any property whatsoever where the participant is required to expend the slightest effort mailing of a registration ticket, for example, or presence at a drawing. . . . Without more, the "[v]aluable consideration" required by our statute cannot be said to have been paid or required, and the scheme does not constitute a "lottery" prohibited by the Utah Constitution.

*Id.* at 986.

The various courts of our sister states have thus adopted two opposing answers, and rationales, for the question before us: (1) the consideration required for a lottery is identical to the consideration necessary to support a simple contract; and (2) the expenditure of mere time, effort, and inconvenience by participants does not furnish sufficient consideration to constitute a lottery, *i.e.*, the necessary consideration is greater than that required to support a simple contract. We must now determine which of these opposing views is applicable in the situation you present.

As we have noted, the two Texas cases that considered the matter—*Brice* and *Socony Mobil*—have said that the mere registration of one's name at a place of business does not furnish consideration adequate to support a lottery. *See Brice*, 242 S.W.2d at 435; *Socony Mobile*, 386 S.W.2d at 172-73. Texas courts have not ventured to say that the consideration required for a lottery is greater than that necessary for a simple contract. We believe, however, that such implication is clear from *Brice* and *Socony Mobil*. Furthermore, we believe that the line of cases represented by *Eagle Food Centers*, *Albertson's*, and *Cudd* is more persuasive than those that hold to the contrary. Although we need not go so far as *Cudd* to say that the only consideration sufficient to support a lottery is that which "impoverish[es] the individual who parts with it," *Cudd*, 377 P.2d at 155, we

---

[1] We must differ here with the court. Our count results in approximately a 3-2 majority for the opposite conclusion.

believe, nevertheless, that when the consideration does not involve money or a thing of value, *i.e.*, when it is limited to the expenditure of time and effort by the participant, that expenditure must be substantial.

We are supported in this view by a 1957 opinion of the General Counsel of the Post Office Department, which, serendipitously, actually alludes to the very matter before us:

> Courts have defined a lottery as a scheme wherein something of value is exacted from participants for the chance of winning a prize, and thus you have the three necessary elements, consideration, chance, and prize. The difficulty ensues when endeavoring to determine whether any particular plan involves the giving up of a consideration, or whether the awarding of the prize is governed by chance. Ordinarily, there is no trouble in determining the presence or absence of a prize.
>
> There have been two fairly recent decisions in the Federal courts dealing with the question of consideration in a lottery: *Garden City Chamber of Commerce v. Wagner*, 100 Fed. Supp. 769, wherein it was held that a requirement that participant visit a number of stores to determine if his number is posted in one of the store windows, thereby entitling him to a prize, does not constitute a consideration for a prize, and that such a scheme is therefore not a lottery; *American Broadcasting Co., Inc. et al. v. Federal Communications Commission*, 110 Fed. Supp. 374, dealing principally with requirements of merely listening to the radio or watching television programs.
>
> This office must continue to hold that the element of consideration is present in a prize scheme when a *substantial* expenditure of time and effort is involved. However, in view of the above court decisions, this office takes the position that consideration is not present in the following and similar situations: where the sole requirement for participation is registration at a store and, in addition, attendance at a drawing or a return to the store to learn if one's name was drawn; visiting a number of stores, or a number of different locations in a store, to ascertain whether one's name or number has been posted; *witnessing a demonstration of an appliance or taking a demonstration ride in an automobile*, etc.

4 GEORGE E. ROSDEN & PETER E. ROSDEN, THE LAW OF ADVERTISING § 55.03[3], n. 24 (Supp. 1990) (quoting Op. Off. Gen. Counsel P.O. Dep't, *Elements of a Lottery* (January 31, 1957)) (emphasis added).

.

Applying the requirement of *substantial* consideration to the situation before us, we conclude, like the Post Office Department, that taking a test drive does not supply the requisite consideration for a lottery. The drive is generally brief; the participant controls the vehicle and may end the drive at any time. Unlike some of the contests described above, no return visits are required. The "time, effort, and inconvenience" of the participant cannot, in our view, be reasonably said to be substantial. Accordingly, it is our opinion that an automobile dealer's promotional contest that requires an entrant to participate in a test drive as a condition of entry does not constitute a "lottery" under section 47.03 of the Penal Code.[2]

---

[2]Similarly, we believe that any "non-valuable" consideration deemed sufficient under section 40.062 of the Business and Commerce Code must also involve a substantial expenditure of time, effort and inconvenience by the participant. That section provides:

> An offeror may not notify a person that the person has won a prize, will receive a prize, or has a chance to win or receive a prize, a condition of receipt of which requires the person to pay consideration of any kind or a charge or expense to a person for the prize except for:
>
> (1) expenses incurred for travel to and from the sales location;
>
> or
>
> (2) a refundable deposit authorized under section 40.007.

TEX. BUS. & COM. CODE ANN. § 40.062 (Vernon Supp. 2000). An offense under this provision is a Class B misdemeanor. *Id.* § 40.121(b).

## S U M M A R Y

An automobile dealer's promotional contest that requires an entrant to participate in a test drive as a condition of entry does not constitute a lottery under section 47.03 of the Penal Code.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee